#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BANK MIDWEST, A DIVISION OF NBH BANK, | ) ) ) |
| Plaintiff, | ) ) ) Case No. |
| v. | ) ) |
| R. F. FISHER ELECTRIC COMPANY, LLC; R. F. FISHER HOLDINGS, INC.; AND G & G LEASING, LLC, | ) ) ) ) ) |
| Defendants. | ) |

### COMPLAINT

COMES NOW, Bank Midwest, a division of NBH Bank, individually and as successor by merger to Peoples Bank (the "Bank" or the "Plaintiff") and for its claims against the above-captioned defendants, states and avers as follows:

### PARTIES, JURISDICTION, AND VENUE

1. The Bank is a Colorado state-charter banking association with its principal place of business in Denver, Colorado.

2. Defendant R.F. Fisher Holdings, Inc. is a Kansas corporation organized under the laws of Kansas with its principal place of business located at 1707 W. 39th Avenue, Kansas City, Kansas 66103. RF Fisher Holdings may be served with process through its registered agent: K&E Services, Inc., 111 S. Kansas Ave., Olathe, Kansas 66061.

3. Defendant R.F. Fisher Electric Company, LLC is a Kansas limited liability company organized under the laws of Kansas with its principal place of business at 1707 W. 39th Ave., Kansas City, Kansas 66061. RF Fisher Electric may be served with process through its registered agent: K&E Services, Inc., 111 S. Kansas Ave., Olathe, Kansas 66061.

4. Defendant G&G Leasing LLC is a Kansas limited liability company organized under the laws of Kansas and may be served with process through its registered agent: K&E Services, Inc., 111 S. Kansas Ave., Olathe, Kansas 66061.

5. For purposes of diversity of citizenship, the Bank is deemed to be a citizen of Colorado.

6. None of Defendants are citizens of the Colorado.

7. Jurisdiction in this action is proper pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000, and because the Bank, on the one hand, and Defendants, on the other hand, are citizens of different states.

8. Venue in this action is proper: (a) pursuant to 28 U.S.C. § 1391(b)(1) because it is brought where Defendants conduct their business and own the property that is the subject of this action, and therefore Defendants are subject to the Court's personal jurisdiction; and (b) pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this District and the principal asset at issue, the real estate described hereafter, is located in this District.

**FACTS COMMON TO ALL COUNTS**

9. Defendants are indebted to the Bank under the following promissory notes (collectively the "Notes"):

(a) Promissory Note dated September 27, 2018, in the original principal amount of $8,709,314 executed by RF Fisher Holdings and RF Fisher Electric payable to Bank Midwest, a division of NBH Bank ("Loan 10500657) (**Exhibit 1**);

(b) Promissory Note dated October 2, 2017, in the original principal amount of $214,575.80 executed by RF Fisher Holdings and RF Fisher Electric payable to Peoples Bank (predecessor in interest to the Bank) ("Loan 10500697") (**Exhibit 2**);

(c) Promissory Note dated October 2, 2017, in the original principal amount of $104,250 executed by RF Fisher Holdings and RF Fisher Electric payable to Peoples Bank (predecessor in interest to the Bank) ("Loan 10082046") (**Exhibit 3**);

2

  (d) Promissory Note dated October 2, 2017, in the original principal amount of $228,836.23 executed by RF Fisher Holdings and RF Fisher Electric payable to Peoples Bank (predecessor in interest to the Bank) ("Loan 10500698") (**Exhibit 4**);

  (e) Promissory Note dated June 30, 2015, in the original principal amount of $375,000 executed by G&G Leasing payable to Peoples Bank (predecessor in interest to the Bank) ("Loan 10081818") (**Exhibit 5**).

10. The Notes are secured by a series of security agreements (the "Security Agreements") that granted the Bank liens on various assets as more fully described in the Security Agreements (the "Collateral") including the following:

  (a) Security Agreement dated June 30, 2015 by and among R. F. Fisher Holdings, Inc., R. F. Fisher Electric Company, LLC and Peoples Bank (as predecessor-in-interest to Bank Midwest, a division of NBH Bank) (**Exhibit 6**);

  (b) Security Agreement dated June 30, 2015 by and among R. F. Fisher Holdings, Inc., R. F. Fisher Electric Company, LLC and Peoples Bank (as predecessor-in-interest to Bank Midwest, a division of NBH Bank) (**Exhibit 7**);

  (c) Mortgage dated June 30, 2015 from R. F. Fisher Holdings, Inc. in favor of Peoples Bank (as predecessor-in-interest to Bank Midwest, a division of NBH Bank) recorded in Wyandotte County, Kansas on July 1, 2015 as Instrument Number 2015R-08910 (**Exhibit 8**);

  (d) Security Agreement dated June 30, 2015 by and among R. F. Fisher Electric Company, LLC, G & G Leasing, LLC and Peoples Bank (as predecessor-in-interest to Bank Midwest, a division of NBH Bank) (**Exhibit 9**);

  (e) Security Agreement dated June 30, 2015 by and among R. F. Fisher Holdings, Inc., G & G Leasing, LLC and Peoples Bank (as predecessor-in-interest to Bank Midwest, a division of NBH Bank) (**Exhibit 10**).

11. The Bank perfected its security interest in the Collateral by filing UCC-1 financing statements with the Kansas Secretary of State (the "UCCs") (**Exhibit 11**).

12. Defendant G&G Leasing, in addition to its own debt, agreed to guaranty payment and performance of RF Fisher Holdings and RF Fisher Electric under the Loan Documents (the "G&G Guaranty").  A true and correct copy of the G&G Guaranty is attached hereto as **Exhibit 12.**

13. Defendants subsequently defaulted on their obligations under the Notes, the Security Agreements, and the Guaranty.

14. On May 15, 2019, the Bank send a Notice of Default to Defendants informing them of the defaults and reserving all rights under the Notes and related loan documents (collectively the "Loan Documents"). A true and correct copy of the Notice of Default is attached hereto as **Exhibit 13**.

15. As part of the efforts to resolve Defendants' defaults, the parties entered into a Standstill Agreement wherein the Bank agreed to hold-off on enforcement action for a period of time in order to allow Defendants an opportunity address the defaults under the Loan Documents. A true and correct copy of the Standstill Agreement is attached as **Exhibit 14**.

16. Defendants have not cured or corrected the defaults.

17. As of September 13, 2019, Defendants are indebted to the Bank under the Notes as follows:

(a) Loan 10500657: $8,709,314.00 in principal, $213,317.71 in accrued interest, $9,368.57 in other charges, plus all costs and fees associated with enforcement of the Loans including reasonable attorneys' fees;

(b) Loan 10500697: $20,881.14 in principal, $426.24 in accrued interest, $520.29 in other charges, plus all costs and fees associated with enforcement of the Loans including reasonable attorneys' fees;

(c) Loan 10082046: $97,205.85 in principal, $1,878.09 in accrued interest, 139.23 in other charges, plus all costs and fees associated with enforcement of the Loans including reasonable attorneys' fees;

(d) Loan 10500698: $213,373.88 in principal, $4,122.56 in accrued interest, $305.61 in other charges, plus all costs and fees associated with enforcement of the Lents including reasonable attorneys' fees;

(e) Loan 10081818: $305,804.59 in principal, $2,751.08 in accrued interest, $432.36 in other charges, plus all costs and fees associated with enforcement of the Lents including reasonable attorneys' fees.

18. In addition, Defendants are overdrawn on their account balances at the Bank in the amount of $1,836,210.64 as of September 13, 2019, for a total indebtedness of $11,416,051.84 (the "Indebtedness").

19. Defendants do not have sufficient cash flow to make payroll or to make their union contribution payments.

20. In light of this inability to pay its employees, Defendants have threatened to immediately cease all operations which would cause them to default on all existing contracts.

## COUNT I: SUIT ON NOTES

21. The Bank hereby incorporates paragraphs 1 through 20 above as though fully set forth therein.

22. Under the terms of the Loan Documents, Defendants RF Fisher Holdings and RF Fisher Electric are obligated to perform all terms and conditions set forth in those documents including, but not limited to, making all monthly payments due and owing under the Notes.

23. Defendants defaulted in the performance of those obligations.

24. As of September 13, 2019, the amount owing under the Loan Documents is $11,416,051.84 in principal and accrued interest, plus accruing interest, costs, expenses, and attorneys' fees plus all existing overdraft balances.

25. The Bank has incurred and will continue to incur attorneys' fees in the enforcement of its rights and remedies under the Loan Documents.

26. The Bank has been damaged in the amount of the Indebtedness as a direct and proximate result of the default set forth herein.

WHEREFORE, Bank Midwest a division of NBH Bank prays for judgment against Defendants RF Fisher Holdings and RF Fisher Electric, jointly and severally, in the sum of $11,416,051.84, plus interest from and after September 13, 2019, at the current per diem default

rate until date of judgment, plus costs and attorneys' fees permitted under the loan documents, and applicable law, which continue to accrue, and granting such other and further relief as is just.

## COUNT II: SUIT ON THE G&G GUARANTY

27. The Bank hereby incorporates paragraphs 1 through 26 above as though fully set forth therein.

28. Under the terms of the G&G Guaranty, G&G Leasing agreed to guaranty payment and performance of all of RF Fisher Holdings' and RF Fisher Electric's obligations under the Loan Documents.

29. The Bank (and its predecessor in interest) relied on the G&G Guaranty in extending the Loans.

30. RF Fisher Holdings and RF Fisher Electric defaulted on their payment and performance obligations.

31. Despite demand, G&G Leasing failed, refused, or otherwise neglected to fulfill its obligations under the G&G Guaranty.

32. As a direct and proximate result of G&G Leasing's failure, the Bank has been damaged in the amount of the Indebtedness.

WHEREFORE, for the above and foregoing reasons Bank Midwest, a division of NBH Bank, prays for judgment against Defendant G&G Leasing in the sum of $11,416,051.84, plus interest from and after September 13, 2019, at the current per diem default rate until date of judgment, plus costs and attorneys' fees permitted under the loan documents, and applicable law, which continue to accrue, and granting such other and further relief as is just.

## COUNT III: SPECIFIC PERFORMANCE – APPOINTMENT OF RECEIVER

33. The Bank hereby incorporates paragraphs 1 through 32 above as though fully set forth therein.

34. Defendants own and operate an electrical subcontracting business in the Kansas City metropolitan area.

35. Defendants have existing subcontracts in various stages of completion.

36. Additionally, Defendants have multiple accounts receivable along with claims to funds in retainage as a result of fully or partially completed jobs.

37. The Bank has a lien on all of Defendants' assets including these contracts, accounts receivable, and other rights to receive payment.

38. Defendants are in default under the Loan Documents.

39. Pursuant to the Loan Documents, the Bank has the right to seek the appointment of a receiver upon a default by Defendants.

40. In particular, the Standstill Agreement provides as follows:

> To the extent allowed in the Loan Documents, and, upon the occurrence of an Additional Default, the Lender shall be entitled, without giving prior notice to Obligors, to apply at any time to a court having jurisdiction thereof for the appointment of a receiver of (a) each of the Borrowers and their Subsidiaries and (b) any of the assets of the Borrowers or their Subsidiaries, and all or any part of the Collateral, and of all proceeds, rents, incomes, profits, issues and revenues thereof, from whatever source derived. Upon application for the appointment of a receiver, and after notice to Borrowers of the application and an opportunity for the Borrowers to be heard, it is hereby expressly covenanted and agreed that the court may appoint such receiver with the usual powers and duties of receivers in like cases and such additional powers and duties as requested by Lender and approved by the court. Obligors agree that Lender may request the appointment of receiver under the Loan Documents including this Agreement as a matter of strict right to the Lender, and without reference to the adequacy or inadequacy of the value of the Collateral, or to the solvency or insolvency of the Obligors, or any of them, and without regard to waste or diminution of the Collateral. Obligors hereby specifically waive the right to object to the appointment of a receiver based on assertions of the alleged adequacy of the value of the Collateral, the Obligors' solvency, or the lack of waste or diminution of Collateral. In order to maintain and preserve the Collateral and to prevent waste and impairment of

its security, the Lender may, at its option, advance monies to the appointed receiver and all such sums advanced shall become a part of the Obligations owed to the Lender under the Loan Documents and shall bear interest from the date of such advance at the highest rate prevailing under the Loan Documents. Upon request by the Lender and approval by the court, the receiver shall have the right to: (i) enter upon the premises of Borrowers and their Subsidiaries, (ii) access and utilize all computer systems and data of Borrowers and their Subsidiaries, (iii) employ such people as are necessary or appropriate to carry out the receiver's duties; (iv) continue to use the names of the Borrowers and their Subsidiaries in conjunction therewith, and (v) pay the Obligations owed by the Borrowers to the Lender.

41. . Thus, based on the Defaults, the Bank is entitled to the appointment of a receiver for Debtors' assets – the Collateral - as a matter of right

42. The Court has the power to appoint a receiver in this situation pursuant to Fed. R. Civ. P. 66 and 28 U.S.C. § 959(b). In addition, under federal law, the receiver has the power to sell the Property. *See* 28 U.S.C. §§ 959(b), 2001-2004.

43. The Bank has an immediate special interest and right to the Collateral.

44. The appointment of a receiver is necessary to take immediate possession and control of the Collateral for the following purposes: (a) to protect the Bank's lien and security interest and prevent imminent and irreparable harm; (b) to perform an accounting of all costs and expenses; (c) to collect all accounts receivable and other rights to payment in the ordinary course of business; (d) to hire employees where necessary to complete such work and projects as the Receiver may deem commercially reasonable to maximize the value of the Collateral; (e) to seek a buyer for the Defendants' assets and if one is identified, to consummate the sale with Court approval; (f) to ensure that the Bank receives the payments and collateral to which it is entitled; and (g) to protect the Collateral and to prevent further waste.

WHEREFORE, Bank Midwest, a division of NBH Bank prays that in accordance with the provisions of the Loan Documents and as provided by law, the Court enter an order (a) appointing

8

a receiver (the "Receiver") who will take possession and control of the Collateral, (b) granting the Receiver the powers and duties set forth in the form or order attached to the Motion to Appoint Receiver filed contemporaneously herewith, and (c) granting such other and further relief as is just.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial of all issues in this matter.

Dated this 16th day of September, 2019.

        STINSON LLP

        /s/  Andrew W. Muller
        Andrew W. Muller, KS #25915
        1201 Walnut Street, Suite 2900
        Kansas City, MO 64106
        (816) 691-3198 – Telephone
        Andrew.muller@stinson.com

        ATTORNEYS FOR BANK MIDWEST, a division of NBH BANK