**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| BANK MIDWEST, A DIVISION OF NBH BANK, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.<br>)<br>) |
| R. F. FISHER ELECTRIC COMPANY, LLC; R. F. FISHER HOLDINGS, INC.; AND G & G LEASING, LLC, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**SUGGESTIONS IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR APPOINTMENT OF RECEIVER**

COMES NOW Bank Midwest, a division of NBH Bank (the "Bank" or the "Plaintiff"), by and through its counsel Stinson LLP, for its Memorandum in Support of its Motion for Appointment of Receiver, states as follows:

### I. BACKGROUND FACTS

On September 13, 2019, the Bank filed a complaint (the "Complaint") against defendants R. F. Fisher Electric Company, LLC, ("RFFEC"), R. F. Fisher Holdings, Inc., ("Holdings"), G & G Leasing LLC ("G&G"; collectively, RFFEC, Holdings, and G&G are the "Defendants") and its Motion for Appointment of Receiver (the "Motion"). In order to avoid consuming the Court's time with unnecessary duplicative recitations, the Bank hereby restates and re-alleges each and every factual allegation set forth in the Complaint.[1] These facts are attested to by the Balsbaugh Affidavit, attached as Exhibit 1.

The upshot of this diversity action is that Defendants have defaulted under their Loan Documents and Forbearance Agreement with the Bank. Defendants have stated their intention to

---

[1] Capitalized terms used herein which are not otherwise defined have the meaning given to them in the Complaint.

immediately cease operating as going concerns, necessitating the appointment of a receiver (Compl. ¶ ¶ 14–20).

In the Commercial Security Agreements, dated June 30, 2015, the Defendants expressly agreed:

> Appoint Receiver
>
> [Bank] shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the indebtedness. The receiver may serve without bond if permitted by law. [Bank's] right to the appointment of a receiver shall exit whether or not the apparent value of the Collateral exceed the indebtedness by a substantial amount.

Complaint at Ex. 9; *see also id.* at Exs. 6-10.

Moreover, the Defendants executed a Standstill Agreement whereby they agreed to the appointment of a receiver on the following terms:

> [T]he Bank shall be entitled, without giving prior notice to the Obligors to apply at any time to a court having jurisdiction thereof for the appointment of s receiver of (a) each of the Borrowers and their Subsidiaries and (b) any of the assets of the Borrowers or their Subsidiaries, and all or any part of the Collateral, and of all proceeds, rents, incomes, profits, issues and revenues thereof, from whatever source derived. Upon application for the appointment of a receiver, and after notice to Borrowers of the application and an opportunity for the Borrowers to be heard, it is hereby expressly covenanted and agreed that the court may appoint such receiver with the usual powers and duties of receivers in like cases and such additional powers and duties as requested by Bank and approved by the court. Obligors agree that Bank may request the appointment of receiver under the Loan Documents including this Agreement as a matter of strict right to the Bank, and without reference to the adequacy or inadequacy of the value of the Collateral, or to the solvency or insolvency of the Obligors, or any of them, and without regard to waste or diminution of the Collateral. Obligors hereby specifically waive the right to object to the appointment of a receiver based on assertions of the alleged adequacy of the value of the Collateral, the Obligors' solvency, or the lack of waste or diminution of Collateral. In order to maintain and preserve the Collateral and to prevent waste and impairment of its security, the Bank may, at its option, advance monies to the appointed receiver and all such sums advanced shall become a part of the Obligations owed to the Bank under the Loan Documents and shall bear interest from the date of such advance at the highest rate prevailing under the Loan Documents. Upon request by the Bank and approval by the court, the receiver shall have the right to: (i) enter upon the premises of Borrowers and

2

their Subsidiaries, (ii) access and utilize all computer systems and data of Borrowers and their Subsidiaries, (iii) employ such people as are necessary or appropriate to carry out the receiver's duties; (iv) continue to use the names of the Borrowers and their Subsidiaries in conjunction therewith, and (v) pay the Obligations owed by the Borrowers to the Bank. In addition, the Obligors hereby specifically consent and agree that the receiver shall have the power to sell the Collateral, and that such power is in furtherance of the receiver's duties to protect and preserve the Collateral and the Bank's interests therein. The Bank shall be permitted to credit bid at such sale in an amount up to the amount of the Obligations (each a "Credit Bid"). The Obligors waive the right to challenge the sufficiency of any Credit Bid. The Obligors shall, and shall cause the Subsidiaries to, execute such transfer documents as are necessary to facilitate the sale of the Collateral as requested by the receiver; provided however, that if the Obligors and/or their Subsidiaries do not execute such documents, the court presiding over the receivership shall have the right, power, and jurisdiction to appoint a person to execute such documents in the name of the Obligors and their Subsidiaries to vest title and effect the conveyance, with the same force and effect as if such documents had been signed by the Obligors and/or their Subsidiaries. The Obligors agree that the power to sell the Collateral vested in the receiver set forth herein shall, by contract, be in addition to any powers the receiver has under applicable law and grant the power to sell the Collateral contained herein in further consideration of the financial accommodations afforded to them hereunder. Obligors shall in no way interfere with the duties of the receiver, and shall cooperate with the receiver in all respects and assist the receiver in discharging the duties of the receiver.

Complaint at Ex. 14 ¶ 7(e).

The appointment of a receiver is necessary to take immediate possession and control of the Collateral for the following purposes: a) to protect the Bank's lien and security interest and prevent imminent and irreparable harm; (b) to perform an accounting of all costs and expenses; (c) to collect all accounts receivable and other rights to payment in the ordinary course of business; (d) to hire employees where necessary to complete such work and projects as the Receiver may deem commercially reasonable to maximize the value of the Collateral; (e) to seek a buyer for the Defendants' assets and if one is identified, to consummate the sale with Court approval; (f) to ensure that the Bank receives the payments and collateral to which it is entitled; and (g) to protect the Collateral and to prevent further waste

3

## II. GOVERNING LAW

The appointment of receivers in diversity cases is governed by federal law and federal equity principles. Fed. R. Civ. P. 66; *Aviation Supply Corp. v. R.S.B.I Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993); *see also Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 842 (9th Cir. 2009); *Natl' P'ship Inv. Corp. v. Nat'l Housing Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998); *Pension Benefit Guaranty Corp. v. Tempcon, Inc.*, 2015 WL 1249716, *3 (W.D. Mich. 2015). "A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court." *Liberte Capital Grp., LLC v. Capwill,* 462 F.3d 543, 551 (6th Cir. 2006); *accord Pension Benefit Guaranty Corp. v. Tempcon, Inc.*, 2015 WL 1249716 at *3. The purpose of a receivership is "to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Liberte Capital Grp., LLC* , 462 F.3d at 551. A receivership is not an end in itself; a district court may appoint a receiver only when the appointment is "ancillary to some form of final relief." *Pension Benefit Guaranty Corp. v. Tempcon, Inc.*, 2015 WL 1249716 at *3.

Pursuant to Fed. R. Civ. P. 66 and 28 U.S.C. § 959(b), this Court has the power to appoint a receiver, and the appointment is a matter of federal law. 12 C. Wright, A. Miller, R. Marcus, *Federal Practice and Procedure* § 2983 at 25–26 (2014) ("Wright & Miller").

As noted by Wright and Miller:

The appointment of a receiver by a federal court may be sought by any person or class having an interest in property that a statute or one of the general principals of equity authorizes the court to protect by this remedy.

There are a number of well-established contexts in which a receivership is thought to be appropriate. As the Fifth Circuit explained in 2012:

Receivers have been used in a number of contexts. 'Secured Creditors, lienholders and mortgages' may seek appointment of a receiver because they clearly have an interest in the property in which they have a security interest . . . .

4

12 Wright & Miller, § 2983 at 14-15 (2014) (quoting *Netsphere, Inc. v. Baron*, 703 F. 3d 296, 306 (5th Cir. 2012)); a*ccord View Crest Garden Apts., Inc. U.S.* 281 F. 2d 844 (9th Cir. 1960) (receiver appointed to collect rents where mortgagor of doubtful financial standing); *New York Life. Sins. Co. v. Watt Est Inv. Corp.*, 755 F. Supp. 287 (E.D. Cal. 1991) (receiver appointed to manage property secured by deed of trust where adequacy of security for loan doubtful, financial strength of mortgagor doubtful, and danger that collateral will diminish in value). In addition, under federal law, the receiver has the power to sell collateral. *See* 28 U.S.C. §§ 959, 2001–2004.

Courts within the Eighth Circuit Court of Appeals regularly enforce the contractual right of a Bank for the appointment of a receiver upon default. In *US Bank, Nat'l Ass'n v. CB Settle Inn Ltd. Partnership*, the District Court granted a motion to appoint a receiver pursuant to the parties' express agreement. 827 F. Supp. 2d 993 (S.D. Iowa 2011). In that case, the loan documents clearly stated that the Bank could obtain the appointment of a receiver in the event of a default by the borrower under the loan documents. Over objection, the court stated,

> In cases where contracts have explicitly provided for appointment of receiver, courts are split as to whether the advance consent is dispositive or merely a factor to consider in the analysis…Being unaware of any controlling law in the Eighth Circuit, the Court has determined that the better approach in this circumstance is to enforce the terms of the contract. The Court does not view the appointment of receiver as a drastic remedy when it is a remedy for which the parties bargained.

*Id.* at 997–98.

The district court's decision in *CB Settle Inn Ltd. Partnership* is supported by numerous courts and should be viewed by this Court as dispositive with respect to the Motion. *E.g.*, *MIF Realty v. Pickett*, 963 S.W. 2d 308, 310 (Mo. App. W.D. 1997) (deed of trust for appointment of receiver enforced); *Am. Bank & Trust Co. v. Bond Int'l Ltd.,* No. 06-CV-0317-CVE-FMH, 2006 WL 2385309, at *7 (N.D. Okla. Aug. 17, 2006) ("[a]ppointment of a receiver is appropriate

5

where the parties have contractually agreed to a receivership."); *Britton v. Green*, 325 F.2d 377, 381-82 (10th Cir. 1963) (court granted receiver based solely on provision in mortgage); *U.S. v. Queen's Court Apts., Inc.,* 296 F.2d 534, 538-40 (9th Cir. 1961) (same); *Freedman v. Mass. Mut. Life Ins. Co.*, 81 F.2d 698, 699 (6th Cir. 1936) (same); *see also U.S. v. Chester Park Apts., Inc.,* 332 F.2d 1 (8th Cir. 1964); *Fed'l Home Loan Bank Corp. v. Nazar*, 100 Bankr. 555, 559 (D. Kan. 1989) (court enforced contractual provisions for assignment of rents and appointment of receiver and recognized that to require a showing of waste or inadequate security before appointing a receiver "essentially requires rewriting or ignoring significant language in many mortgages.").

In *A & R Realty Co. v. Northwestern Mut. Life Ins. Co.*, the Eight Circuit Court of Appeals affirmed the enforcement of the agreement of the parties, set forth in the deed of trust, to the appointment of a receiver for property located in Kansas City, Missouri, to collect rents upon a default. 95 F.2d 703 (8th Cir. 1938); *see also U.S. v. Cedar-Riverside Land Co.*, 592 F.2d 470, 472 (8th Cir. 1979) ("After a thorough review of the record, we find the district court's order justified not only by appellants' contractual agreement that a receiver could be appointed in the event of default, but also by equitable considerations."). In so doing, the Court of Appeals rejected the mortgagor's argument that the showing made by the mortgagee was not sufficient to justify the court in appointing a receiver by stating: "We think that there is no merit in this contention. The deed of trust contained the agreement of the parties that a receiver pendente lite might be appointed." *A & R Realty Co.*, 95 F.2d at 708.

Similarly, in *U.S. v. Chester Park Apts., Inc.*, the Eighth Circuit Court of Appeals affirmed the appointment of a receiver based merely on a contractual right for such appointment upon default, "without the need for further findings." 332 F.2d 1, 5 (8th Cir. 1964), cert. denied,

6

379 U.S. 901 (1964); accord *U.S. v. Mountain Village Co.*, 424 F. Supp. 822, 827-28 (D. Mass. (1976)).

### III. ARGUMENT

The plain language of the parties' contracts and the equitable circumstances of this case together warrant the appointment of a receiver. Defendants expressly agreed to the appointment of receiver in the Loan Documents and in the Standstill Agreement upon the defaults described in the Complaint. In other jurisdictions, courts readily find cause to appoint receiver where a borrower is in substantial default and where the borrower has ceased regular payments. *Braun v. Pepper*, 578 P.2d 695 (Kan. 1978); *accord, Hutton v. Rainbow Tower Assocs.*, 601 P.2d 665 (Kan. 1979).

Defendants have stated their inability to make payroll and have further indicated that they will immediately cease operations. A receiver would be tasked with the immediate windup of the Defendants' operations, but would also preserve the immediate going concern value of the projects currently underway. If a receiver were not appointed here, the value of the Collateral will erode drastically because accounts will be rendered uncollectible. The district court in *Tempcon*, determined that a similar dissipation of assets demonstrated the inadequacy of the the Bank's remedies at law. The court stated:

> The Court concludes that legal remedies are inadequate because the PBGC cannot recover assets that have been transferred to meet the payrolls of the Estate and the other affiliated entities.

*Pension Benefit Guaranty Corp. v. Tempcon, Inc.*, 2015 WL 1249716 at *6.

Likewise, in *Cadence Bank, N.A. v. Manausa Holdings, LLC*, another case involving a Bank's request for the appointment of a receiver, the court described the Bank's remedies at law as "profoundly inadequate," stating:

7

> Plaintiff's legal remedies are profoundly inadequate. An action for damages cannot adequately compensate Plaintiff since the debtor on the note does not have the funds to make the payments as agreed. The only way to try to secure repayment of the loan is to manage the rental income so that those funds pay down the debt and taxes, and to stop the diversion of rental income to management fees. This factor weighs very heavily in favor of appointment of a receiver.

2012 WL 1252494 at *3 (N.D. Fla. 2012).

The Bank's remedies at law in this case are likewise "profoundly inadequate." Once the value of the Collateral is dissipated, that value cannot be recovered. Requiring the Bank to exchange its bargained-for Collateral for a mere unsecured "hope" that the outstanding obligations can be repaid by a defunct company would in no way be adequate. Moreover, appointment of a receiver will preserve dozens of jobs, allow an orderly completion of ongoing projects, and maintain normal collection of receivables.

Respectfully, this case does not present a "close" call. Defendants are clearly in default, and have acknowledged such default. Defendants have no defenses or counterclaims against the Bank. The Bank has afforded Defendants ample opportunity to cure their defaults and they have failed to do so. Without a receiver, the Bank and other constituent groups will be irreparably harmed.

The Bank proposes that Cordes & Company be appointed as receiver. Mr. Michael Staheli, as a representative of Cordes stands ready and willing to assume the role of receiver in this case. As set forth in the attached biographical sketch, Cordes has extensive experience acting as a court-appointed receiver. The detailed particulars of Cordes' experience are set forth more fully on Exhibit 2 to the Motion.

### IV. CONCLUSION

For the foregoing reasons, the Bank respectfully requests that the Court appoint Cordes & Company as receiver in this case.

Dated: September 16, 2019

Respectfully submitted,

STINSON LLP

/s/ Andrew W. Muller
Andrew W. Muller, KS #25915
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Tel. (816) 842-8600
Fax (816) 691-3495
andrew.muller@stinson.com

ATTORNEY FOR BANK MIDWEST, A DIVISION OF NBH BANK