IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **BANK MIDWEST, A DIVISION OF NBH BANK,** | ) ) ) | |
| **Plaintiff,** | ) ) ) | Case No. 19-02560-CM-GEB |
| v. | ) ) | |
| **R. F. FISHER ELECTRIC COMPANY, LLC; R. F. FISHER HOLDINGS, INC.; AND G & G LEASING, LLC,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## ORDER APPOINTING RECEIVER

Now on this 23rd day of September, 2019, this matter comes before the Court on the motion of Bank Midwest, a division of NBH Bank (the "Bank") for the appointment of a receiver (the "Motion") over the real and personal Collateral of defendants R. F. Fisher Electric Company, LLC, ("RFFEC"), R. F. Fisher Holdings, Inc., ("Holdings"), G & G Leasing LLC ("G&G"; collectively, RFFEC, Holdings, and G&G are the "Defendants"), as set forth on Exhibit A hereto and as defined in the Complaint filed in this action (the "Collateral").

The Court has considered the allegations of the Complaint herein, the Affidavit of Michael D. Balsbaugh in support of the Motion duly sworn to, the exhibits, the statements of counsel, and applicable law, and for good cause shown, pursuant to Fed. R. Civ. P. 66, it is

HEREBY ORDERED as follows:

1. **Motion Granted.** The Motion for Appointment of Receiver is GRANTED.

2. **Receiver Appointment.** Michael L. Staheli, Managing Director of Cordes & Company, hereby is appointed receiver (the "Receiver").

a. **Powers of the Receiver:** [The Receiver shall manage, operate, protect and liquidate the Collateral subject to the supervision and exclusive control of this Court. The appointment of the Receiver shall not be deemed a "change in control" or "change in ownership" of the Defendant under any contracts, franchise agreements, licenses, permits, or other matters relating to the operations of the Defendant's Business or an assignment of any such contracts, agreements, licenses, and permits. The Receiver is authorized and empowered to exercise all the powers and rights permitted by law and the Loan Documents, as that term is defined in the Complaint, governing the lending relationship between the Bank and the Defendants, including but not limited to the following:The Receiver is hereby directed and empowered to take or continue to take from Defendants, their agents and employees, immediate possession of the Collateral, and all things relating to the Defendant's business, including without limitation rents, revenues, royalties, issues, income, payments and profits, and any and all personal Collateral used or associated therewith, regardless of where such Collateral is located, including, but not limited to, construction contracts, completed work of Defendants, payment applications submitted to customers, mechanics liens filed by the Defendants, uncollected claims or judgments against customers, receivables, franchise agreements, permits, licenses, rental payments, lease payments, insurance payments, awards, operating accounts, merchant accounts, escrow accounts, including those accounts which may be in the names of third parties to the extent that they contain payments or proceeds from credit card issuers made on behalf of the customers, Bank accounts, security deposits, records, files, reports, studies, construction drawings, architectural designs, shop drawings, options, contracts, and similar relationships with third parties, leases, occupancy agreements, , agreements, permits, licenses, checks, drafts, notes,

documents, accounts receivable, fixtures, furniture, furnishings, software, computers, appliances, supplies, tools, vehicles, equipment, construction materials, goods, equipment, and other things and articles of any and all types and kinds used or associated with the Collateral.

    b. The Receiver is further empowered to exclude Defendants, their agents and employees from such possession.

    c. The Receiver is hereby appointed to take charge of and to manage, operate, protect and liquidate the Collateral, and is hereby given the powers and authority usually held by receivers and reasonably necessary to accomplish the purpose of this receivership, including, but not limited to, the following powers, all of which may be exercised without further order of this Court, except as expressly stated below:

    (i) to enter upon, take possession of and assume control of the Collateral and all improvements thereto and all books, records and real and personal Collateral relating to the Collateral, including, without limitation, computers, computer records and software licenses and systems and similar records and computer systems relating to information for the Collateral ;

    (ii) to retain security personnel as necessary to secure the Collateral;

    (iii) to conduct a full inventory of all personal Collateral comprising a part of the Collateral, if necessary;

    (iv) to take possession of all Bank accounts containing funds associated with the Collateral, arising from the Collateral and any proceeds of the Loan Documents, including all merchant accounts, whether in the name of all or any of the Defendants or in the names of third parties, to the extent that they contain

3

payments or proceeds from credit card issuers made on behalf of the customers and to open, transfer and change all Bank and trade accounts relating to the Collateral , so that all such accounts are in the name of the Receiver; and to make withdrawals from and issue checks upon such accounts to fund the operations of the receivership;

(v) to manage, operate, maintain, control and liquidate the Collateral as necessary to prevent diminution of the Collateral's value and the Bank's interest therein including, but not limited to, (i) collection of deposits, fees, rents, income, issues, profits, royalties, payments and revenues of any kind or nature whatsoever relating to or arising in connection with the Collateral of Defendant's Business now due or which may hereafter become due and to immediately take whatever steps are reasonably necessary to secure all such income, and (ii) to negotiate, extend, terminate, modify, renegotiate, ratify or enter into leases, franchise agreements, contracts or other agreements related to the repair, maintenance, operation, rental occupancy, use or leasing of the Collateral , and to contract for tenant finish or other capital improvements with respect to all or any portion of the Collateral, and (iii) from the date of this order, the payment of taxes, insurance, utility charges and other expenses and costs incurred in managing and preserving the Collateral , provided however, that the Receiver shall obtain the prior written approval of Bank for any such single cost or expense in excess of $25,000 which approval shall be deemed granted as a matter of course, unless an objection to such expense is given to the Receiver within five (5) business days after the giving of written notice by the Receiver of the proposed expense to Bank

and its counsel;

(vi) to enforce, modify, renegotiate, or terminate, if appropriate, any existing contracts relating to the Collateral and to enter into new contracts;

(vii) to perform ordinary and necessary repairs and maintenance to ensure the Collateral's value is maintained in preparation for liquidation;

(viii) to make, enforce, modify, negotiate and enter into such agreements and contracts with regard to the Collateral as the Receiver may reasonably deem appropriate in connection with the discharge of the Receiver's duties and in the case of any such leases, contracts or agreements which are not in the best interests of the Collateral to rescind or terminate the same; provided, however, except for future reservations, no such contracts and agreements shall extend longer than 60 days beyond the termination of the Receivership unless authorized by Bank, which authorization shall be deemed granted as a matter of course, unless an objection to a specific agreement is given to the Receiver within ten (10) business days after the giving of written notice by the Receiver of any agreement for which approval is required to Bank and its respective counsel, if any;

(ix) to open, transfer and change all Bank and trade accounts relating to the Collateral , including all merchant accounts, whether in the name of Defendant or in the names of third parties, to the extent that they contain payments or proceeds from credit card issuers made on behalf of customers, so that all such accounts are in the name of the Receiver;

(x) to obtain and renew all insurance policies that the Receiver deems necessary for the protection of the Collateral and for the protection of the interests of the

Receiver and the parties to this action with respect to the Collateral, but in no event shall the Receiver maintain insurance for the Collateral in an amount less than that required under the Loan Documents; and to notify any insurers of the Collateral of the pendency of these proceedings and that, subject to the prior rights of any person possessing a lien on the Collateral, any proceeds paid under such policies shall be paid to the Receiver;

(xi) to borrow from Bank, on such reasonable terms as may be mutually acceptable to Bank and the Receiver, funds to meet working capital needs of the Defendant's Business in excess of the income from the Collateral , such funds to be advanced under the Loan Documents to be added to the outstanding indebtedness of Borrowers pursuant to the Loan Documents, as Bank and the Receiver may mutually determine;

(xii) to apply for, transfer, obtain and renew, as necessary to prevent the loss of or loss of use of all licenses, permits and entitlements required for the operation of the Collateral or issued in connection therewith;

(xiii) to enter into contracts for those materials and services necessary to aid the Receiver in the administration of the Receivership, including the retention of skilled tradesmen, unskilled laborers, and other trades necessary to complete the work of the Company and to collect upon executed contracts; and, attorneys and accountants and other professionals, with all reasonable expenses incurred in connection therewith deemed to be expenses of the Receivership;

(xiv) to institute such legal actions as the Receiver deems necessary to: (i) collect accounts and debts, and enforce contracts and other agreements relating to the

Collateral, (ii) recover possession of the Collateral and deposits from persons who may now or in the future be wrongfully occupying the Collateral or any part thereof, and (iii) enforce all rights of action and claims for recovery arising out of or related to the Collateral or its operations, including without limitation seeking substitution as the real party in interest in pending causes of action; to settle mechanic's liens, subject to Court approval; and to investigate and, if the Receiver deems appropriate, protest Collateral taxes for all or parts of the Collateral and, where available, file for abatement of previously paid Collateral taxes;

(xv) to change any or all locks at the Defendant's place(s) of business;

(xvi) to collect and liquidate all Defendants' machinery, equipment, tools, inventories, supplies, fixtures and furnishings in a commercially reasonable manner;

(xvii) to ratify, confirm, renegotiate, modify, and hold all lease agreements, franchise agreements, rental agreements, construction contracts, and other agreements relating to the operation, management of the Defendant's Business, including, without limitation, any settlement agreements entered into with respect to former or existing agreements, contracts, and other agreements and to deal as appropriate with and hire or terminate future independent contractors, employees of the Defendant's Business, managers, rental agents, or professionals dealing with the Collateral;

(xviii) to hire such brokers or other professionals as the Receiver deems appropriate to assist with listing and marketing the Collateral for sale;

(xix) to generally do such other lawful acts as the Receiver reasonably deems

7

necessary for the effective operation and management of the Collateral and to perform such other functions and duties as may from time to time be required and authorized by this Court, by the respective laws of the States of Missouri and Kansas, or by the laws of the United States of America;

(xx) notwithstanding anything herein to the contrary, review all contemplated Collateral liquidation activities with the Bank prior to sale and obtain prior Bank approval of the marketing and valuation methodology for each asset category being liquidated;; and

(xxi) take any further actions that are customarily performed by or attributed to a receiver in similar circumstances.

3. **Receiver Compensation.** The Receiver shall, on a monthly basis, pay itself as compensation for its services the hourly rates as set forth on Exhibit B hereto, and reimburse itself for its customary out-of-pocket expenses incurred. When the Receiver files each quarterly accounting to the Court as set forth below, the Receiver shall report the payment of his compensation earned during that quarter. The Bank may, but is not required to, advance funds to cover the Receiver's Fee if the cash receipts are not sufficient to cover the Receiver's Fee and funds advanced shall be additional indebtedness owed by Defendants and secured by the Collateral.

4. **Application of Proceeds:** The Receiver is hereby authorized to apply the rents, revenues, income, issues and profits collected by the Receiver in connection with the management, operation and liquidation of the Collateral: first, to the Receiver's compensation as identified above; second, to the other costs and expenses of the receivership, including any operating expenses, attorney fees and other out-of-pocket expenses incurred by the Receiver in

connection with the receivership; third, to the costs of operating, maintaining and repairing the Collateral; fourth, to payment of expenses of the Collateral, including but not limited to payment of real and personal property taxes, insurance, water and sanitation bills, utilities and other operating expenses; fifth, to repay all sums borrowed by the Receiver; sixth, whenever sufficient funds are available for such purpose, the Receiver shall make principal and interest payments toward the indebtedness of the Bank, and seventh to a fund to be held by the Receiver in an interest-bearing account, pending further order of this Court.

5. **Reporting Requirements.** Commencing with the first full month after his appointment, the Receiver shall:

a. provide on a quarterly basis to the parties to this action information relating to the management and operation of the Defendant's Business including financials; and

b. within twenty (20) days after the end of each third full month file with this Court a report concerning the Receivership activity of the Collateral and an accounting to the Court for the preceding quarter, and shall serve same on counsel for Bank, Defendant, and all other persons who enter an appearance in this action. Financial information may be filed directly with the parties.

6. **Directive to Defendants.** Defendants, and all persons in active concert and participation with it, including employees, agents, managers, accountants and Banks, be and the same hereby are, ordered:

a. to deliver immediately over to the Receiver or its agents all Collateral described above, including without limitation, any and all franchise agreements, lease agreements, permits, licenses, rental payments, lease payments, keys to the Defendants' Business, accounts receivable, security deposits, trust accounts, Bank accounts, all merchant accounts, whether in

the name of the Defendants or in the names of third parties, to the extent that they contain payments or proceeds from credit card issuers made on behalf of the customers, personal need accounts, personnel files, operations manuals, subscriber lists, billing information, financial records, payroll records, records, contracts for outside services and consultants, certificates and licenses, contracts, leases, rent rolls, fixtures, inventory, supplies, furniture and equipment used or associated therewith, and all other things of value relating to the Collateral or Defendants' Business (including without limitation such records and other papers in its possession or under its control as may be pertinent to the status of the Collateral and the Defendant's Business and the Receiver's operation and management thereof), properly endorsed to the Receiver when necessary;

    b. to continue to deliver immediately to the Receiver all collections on accounts receivable and credit card receivables, security deposits, lease payments, rental payments, other collections, books, rent rolls and other records relating to the operation, maintenance and management of the Collateral, and to permit the Receiver to carry out his duties hereunder without interference; and

    c. when necessary or when requested, to explain the operation, maintenance and management of the Collateral and to the Receiver or his agents.

    7. **<u>Injunction.</u>** Except as may be expressly authorized by this Court hereafter upon notice and a hearing, Defendant, its agents, employees, representatives or anyone claiming under such are enjoined from:

    a. Other than under the supervision of the Receiver, collecting any rents, revenues, accounts, issues and profits from the Collateral or withdrawing funds from any Bank or other depository account relating to the Collateral;

b. Terminating or causing to be terminated any license, permit, lease, contract or agreement relating to the Collateral; or

c. Otherwise interfering with the operation of the Collateral or the Receiver's discharge of his duties hereunder.

8. **Term of the Receivership.** The Receiver shall continue in possession of the Collateral during any period of redemption and thereafter, until discharged by the Court.

9. **Limitation of Liability for Receiver.** The Receiver serves herein, and discharges all his duties under this Order, as an officer of this Court, solely in a representative capacity, and not in an individual capacity, and does not, in being appointed as Receiver or by acting as Receiver hereunder, thereby become personally liable to any person or governmental entity under any law, statute, rule, regulation, or other doctrine of law or equity. All persons dealing with the Receiver shall look only to the Receivership Collateral, and not the Receiver or its officers, directors, employees, or agents, for the satisfaction of all claims against and obligations and liabilities of the Receiver and the Receivership Collateral.

10. **Further Powers / Clarification.** The Receiver shall have such other and further powers as the Court by its order from time to time may grant and direct. From time to time, the Receiver may file a motion that seeks clarification of this order and guidance from the Court with respect to the Duties.

11. **Receiver Bond.** The Receiver shall make, execute and deliver to the Clerk of this Court a bond as provided by law in the sum of $50,000 and upon approval of this bond, this Order shall take effect immediately.

12. **Bankruptcy Filing**: Only the Receiver shall have authority to file a bankruptcy case on behalf of Defendants. In the event that a bankruptcy case is filed by the Defendant during

11

the pendency of this Receivership, Plaintiff may file an immediate motion in the bankruptcy case seeking dismissal based on Defendants' lack of authority to file the bankruptcy Petition. The Receiver is authorized to remain in possession and preserve the property pending the outcome of such motion. The Receiver's authority to preserve the Property is limited as follows: The Receiver may continue to collect the Property and the proceeds thereof. The Receiver may make disbursement, but only those, which are necessary to preserve and protect the Property. The Receiver shall not execute any new leases or other long-term contracts. The Receiver shall do nothing that would affect a material change in circumstances of the Property. The Receiver is authorized to retain legal counsel to assist the Receiver with the bankruptcy proceedings.

13. **Assignment of Loan Documents**. In the event the Plaintiff assigns its interests in the Loan and its entitlement to the Collateral or its proceeds to a third party, then such third party shall be the successor and assign of the Plaintiff in connection with all obligations imposed upon, and all rights of, the Plaintiff pursuant to the Order. The Receiver shall continue in possession of the Collateral and the Receivership Estate until discharged by the Court. The Receiver shall endeavor to wind up the Receivership expeditiously in cooperation with Plaintiff or otherwise at the direction of the Court. If no objections to the final report and motion for discharge have been delivered to the Court, the Receiver, and other parties having entered their appearance in this proceeding, by first class mail to such address as is reflected in the Court records within fifteen (15) days after the final report and motion for discharge are filed with the Court, the final report will be accepted by the Court, and the Court will enter an order terminating the Receivership and discharging the Receiver. The Receiver's bond shall be dismissed following the approval of the final report and entry of the discharge order.

Dated this 23rd day of September, 2019, at Kansas City, Kansas

                                        **s/ Carlos Murguia**
                                        **CARLOS MURGUIA**
                                        **United States District Judge**

## EXHIBIT A – LIST OF RECIEVERSHIP PROPERTY

- **All assets of Borrowers R.F. Fisher Holdings, Inc., R.F. Fisher Electric Company, LLC, and G&G Leasing, LLC including:**

    - **All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described;**

    - **All products and produce of any of the property described herein;**

    - **All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described herein;**

    - **All proceeds, including insurance proceeds, from the sale, destruction, loss, or other disposition of any of the property described herein and sums due from a third party who has damaged or destroyed any item or from that third party's insurer,**

    - **All records and data relating to any of the property described herein, whether in the form of a writing, photgraph, microfilm, microfiche, or electronic media, to gether with all rights, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.**

CORE/3000603.0079/154738167.2

## EXHIBIT B – RECEIVER FEE

| | |
|---|---|
| Cordes Principals | $295 to 385 per hour |
| Cordes Sr. Professional Staff | $195 to 235 per hour |
| Cordes Professional Staff | $125 to 150 per hour |
| Cordes Administrative Staff | $40 to 100 per hour |