IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BANK MIDWEST,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 19-2560-JAR-GEB |
| ) | |
| **R.F. FISHER ELECTRIC** ) | |
| **COMPANY, LLC, et al.,** ) | |
| ) | |
| **Defendants,** ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Receiver Michael L. Staheli's Motion for Leave to File an Amended Answer and Counterclaims to the Intervenor's Complaint (**ECF No. 50**). After review of the parties' briefing, including the motion, Intervenor Plaintiff International Brotherhood of Electrical Workers Local 124's Memorandum in Opposition (ECF No. 54), and Receiver's Reply (ECF No. 55), the Court **GRANTS** the motion (ECF No. 50) for the reasons outlined below.

**I.    Background[1]**

Defendant R.F. Fisher Electric Company, LLC ("Fisher") is an electrical contracting company which served the Kansas City metro area for approximately 30

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1); the Intervenor's Complaint (ECF No. 33); the Answers to Intervenor Complaint (ECF Nos. 36, 37); the briefing surrounding the pending motion (ECF Nos. 50, 54, 55); and the Proposed Amended Answer and Counterclaims to Intervenor's Complaint (ECF No. 50-1, Ex. 1.) This background information should not be construed as judicial findings or factual determinations.

years. It and its related companies (Defendants R.F. Fisher Holdings, Inc. and G&G Leasing, Inc.) entered into a number of loans, promissory notes and security agreements with Plaintiff Bank Midwest over the years, and subsequently defaulted on those obligations. When Defendants failed to maintain sufficient cash flow to make payroll or to make their union contribution payments, they threatened to immediately cease all operations. Plaintiff Bank Midwest then filed this lawsuit on September 16, 2019, against Fisher and the other related defendants seeking more than $11.4 million in unpaid loan obligations plus interest, costs, and attorneys' fees.

On that same day, Fisher released all employees, terminated operations, and turned the keys to their facilities over to the Plaintiff Bank. At the time Fisher ceased operations, it had existing subcontracts in various stages of completion, and multiple accounts receivable and claims to funds in retainage as a result of fully or partially complete electrical contracting jobs.

Shortly thereafter, Plaintiff sought the emergency appointment of a Receiver. (Motion, ECF No. 3.) On September 23, 2019, the District Court appointed Michael Staheli as Receiver to manage the protection and liquidation of the real and personal collateral of the Defendants. (Order, ECF No. 11.) Under the Order Appointing Receiver, the Receiver was directed and authorized to, among other things, take control of, liquidate, protect, and preserve Fisher's assets, including, but not limited to, the collection of accounts receivables owed to Fisher. (*Id.*)

As a representative of approximately 150 electrical workers employed when Defendants ceased operations, the International Brotherhood of Electrical Workers Local

Union No. 124 ("Union") sought to intervene in this action, which was granted by this Court on April 14, 2020. (Order, ECF No. 30; Mem. & Order, ECF No. 32.) The Union contends the employees, who are Union members, are due wages for the week ending September 15, 2019 and Monday, September 16, 2019 which remain unpaid. Its Intervenor Complaint seeks approximately $137,955.11 in wages and delinquent fringe benefit contributions under its Collective Bargaining Agreement ("CBA") with Defendants, as well as accountant and attorneys' fees. (Intervenor Complaint, ECF No. 33.) The Intervenor Complaint seeks a declaratory judgment that its wage and benefits claim takes priority over other claims to Defendants' assets, and claims Defendants and the Receiver have failed to comply with the CBA by failing to pay said wages and benefits. (*Id.*)

Following the Union's intervention, both the Plaintiff Bank and the Receiver filed Answers to the Intervenor Complaint, generally denying the Union has standing to assert the wage claim and denying the wage claims take priority over the Bank's claims. (ECF Nos. 36, 37.) After a Court-approved sale of real property owned by Defendants (Order Authorizing Sale, ECF No. 46) and approved distribution of a portion of the proceeds to the Plaintiff Bank, a reserve of $175,000 was held pending resolution of the Bank's and Union's lien priority dispute. (Order, ECF No. 47.)

Since his appointment, the Receiver has provided four reports to the Court on the progress of his activities. (ECF Nos. 15, 28, 38, 58.) The Fisher warehouse sale "concluded the Receiver's liquidation activities of real and personal assets of" R.F.

3

Fisher. (Fourth Report, ECF No. 58-1.)  However, the Receiver's collection efforts continue regarding the remaining accounts receivables.  (*Id.*)

The undersigned Magistrate Judge conducted a motion hearing on April 14, 2020 to discuss not only the Union's motion to intervene but also the status of the case and a schedule for this matter. (*See* ECF Nos. 29, 30.)  Following discussion of the motion, it appeared to be all counsel's position that a formal schedule was not necessary to move this action forward.  As a result, thus far this matter has progressed without a formal schedule.[2]  Expedited briefing was later permitted by Chief Judge Julie A. Robinson on the Union's declaratory action regarding the priority of the liens of the Union and Bank (*see* competing Motions, ECF Nos. 51, 52), and the declaratory judgment issue is ripe for consideration before Chief Judge Robinson.

## II.   Receiver's Motion for Leave to File an Amended Complaint and Counterclaims to Intervenor Union's Complaint (ECF No. 50)

Days before the Bank and Union filed their declaratory judgment briefs, the Receiver filed its instant motion for leave to file an amended answer to the Union's Intervenor Complaint.  The Receiver seeks to file an amended answer to include newly-proposed counterclaims, but the Union opposes such amendment.

### A.   Parties' Positions

The Receiver contends the receivables owed to Fisher at the time of the Receiver's appointment included expected payments for labor provided by Fisher's employees who

---

[2] The April 14, 2020 telephone conference was not recorded; therefore, no transcript exists.  The Court's own handwritten notes contain the information regarding the parties' positions on a schedule, and said notes are maintained in the Chambers file of the undersigned Magistrate Judge.

were members of the Union. (Motion, ECF No. 50, ¶ 9.)  The Receiver further argues those receivables are receivership property which was to be collected solely by the Receiver and then applied as directed in the Order of Appointment. (*Id*. at ¶ 10.) However, the Receiver alleges during the course of this receivership, the Union contacted some of Fisher's former customers to obtain payment directly.  The Receiver claims the total amount of such "Diverted Fisher Receivables" was approximately $367,000. (*Id*. at ¶¶ 11, 12.)  The Receiver now asks to amend its Answer to the Union's Complaint by including counterclaims regarding the Union's taking and diversion of what the Receiver contends was receivership property, and which the Receiver contends violated the Order of Appointment.  (*Id*. at ¶¶ 20-21.)

      The Receiver notes this is his first request to amend, this case has no scheduling order governing the Union's Intervenor Complaint, and although the Union, Plaintiff Bank and Receiver have informally exchanged information, no formal discovery has been conducted.  Because of these characteristics of this matter, the Receiver notes his request is timely and the proposed amendment will not interfere with any deadlines. (*Id*. at 5.) And, because the amendment does not require the addition of new parties or affect any deadlines, there is no undue prejudice to other parties.  (*Id*.)  Additionally, the Receiver notes he intends to pursue these claims either in this case or by filing a separate action, and the Union will have the opportunity to issue discovery on the claims.  (*Id*. at 5-6.) Finally, the Receiver notes the addition of the counterclaims is compulsory under Fed. R. Civ. P. 13, as the issues of fact and law raised by both the Union's Complaint and the

Receiver's proposed counterclaims are largely the same and involve the same rights of the parties. (*Id*. at 7.)

The Intervenor Plaintiff Union opposes the request for amendment to add the counterclaims. The Union argues the Receiver's failure to include the counterclaims in his original Answer constitutes undue delay, because the information on which the counterclaims is based was available to the Receiver at the time of his original Answer. (ECF No. 54 at 3.) The Union contends the Receiver knew the Union was trying to secure payment for its members by negotiating with Defendants' contractors, and evidence of this was clearly found in the Union's March 20, 2020 motion to intervene. (*Id*.) The Union maintains it will be unduly prejudiced by the addition of the claims because it will have to "expend additional time and resources and [it will] substantially delay the progress of this action." (*Id*. at 4, citation omitted.) Finally, the Union contends the proposed counterclaims for conversion and tortious interference are futile, because any money obtained by the Union on behalf of its members belongs to the members and therefore does not meet the Kansas common law definition of conversion or the elements required for an interference claim. (*Id*. at 4-5, citations omitted.)

Although the Union accepts the proposed counterclaims would be compulsory under Fed. R. Civ. P. 13, it argues the compulsory nature of the claim "is only one of the factors the court must consider" when determining amendment. (*Id*. at 6, citation omitted.) The Union contends the undue delay, undue prejudice, and futility of the proposed amendment outweigh the compulsory nature of the proposed counterclaims. (*Id*. at 7.)

6

The Court notes nether the Plaintiff Bank nor the Fisher Defendants take a position regarding the proposed amendment and counterclaims. Neither Plaintiff nor Defendants filed a responsive brief regarding this issue.

### B.     Legal Standards

#### 1.     Standard for Amendment of the Pleadings

The standard for permitting a party to amend his or her pleadings is well established. A party may amend its pleading as a matter of course under Fed. R. Civ. P. 15(a)(1), either before the responding party answers or within 21 days after service of a responsive pleading. However, in cases such as this where the time to amend as a matter of course has passed, without the opposing party's consent a party may amend its pleading only by leave of the court under Rule 15(a)(2).

Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and the decision to allow an amendment is within the sound discretion of the court.[3] The court considers a number of factors in deciding whether to allow an amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment.[4] In exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[5]

---

[3] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).
[4] *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc*., No. 12–2269–EFM-JPO, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013), *report and recommendation adopted*, 2013 WL 328986 (D. Kan. Jan. 29, 2013).
[5] *Hinkle v. Mid-Continent Cas. Co*., No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

The Tenth Circuit Court of Appeals acknowledged that Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties,'"[6] especially in the absence of bad faith by an offending party or prejudice to a non-moving party.[7]

### 2. Standard for Addition of a Counterclaim

Because the Receiver seeks not only to amend his answer but to add counterclaims, it is also appropriate for the Court to consider Fed. R. Civ. P. 13. Rule 13(a)(1) requires a "compulsory counterclaim" if a pleader's claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require adding another party over whom the court cannot acquire jurisdiction." In the event the counterclaim is not filed with the initial answer, Rule 13(e) gives the court discretion to "permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." With all the above standards in mind, this Court evaluates the Receiver's motion.

## C. Discussion

Although the parties disagree on the conclusions for each, they agree the following Rule 15 factors should be analyzed: timeliness of amendment, undue prejudice, and futility. No party mentions bad faith in the briefing and the Court sees none; therefore, that factors is not considered in the analysis.

---

[6] *Carefusion 213, LLC v. Professional Disposables, Inc.*, No. 09–2616–KHV–DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010) (citing *Minter,* 451 F.3d at 1204) (quoting *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir. 1982)).
[7] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).

### 1. Timeliness

The Union contends the Receiver knew or should have known about the payments it sought from contractors at the time of his initial Answer. The Receiver maintains this has been a large, complex and contentious case requiring the Receiver's significant attention, and he waited less than six months from the Union's request to intervene before seeking leave to file the proposed counterclaims. As the Receiver points out, there is a limited amount of receivership assets available to satisfy all claimants, and he is attempting to exercise his business judgment to determine the best course of action. Additionally, he maintains although the Union mentioned its negotiations with contractors and property owners in its motion for intervention, the Union's motion did not state or disclose that payments had been obtained which would have constituted Fisher's receivables, nor did the Union disclose any amounts.

After review of the parties' arguments, the Court finds the Receiver did not unduly delay in seeking to amend his answer to include the proposed counterclaims. The Court permitted the Union to intervene and the Intervenor Complaint was filed April 28, 2020. The Receiver sought leave to amend to include his counterclaims on September 3, 2020—just four months after the complaint was filed and less than four months after the Receiver's Answer. A review of the docket, including the regular reports of the Receiver, reveals this has been a contentious and complex receivership action. Furthermore, this is the Receiver's first request to amend his Answer.

The Union is correct that untimeliness alone is a sufficient reason to deny leave to amend, particularly when the party seeking amendment "has waited too long and cannot

account for the delay."[8] And, a motion to amend is subject to denial where a party seeking amendment knows or should have known of the facts upon which the proposed amendment is based in his original pleading, but fails to do so.[9] However, the Court finds denial on these bases is not appropriate here. For example, in *Castanon v. Cathey*,[10] a recent Tenth Circuit Court of Appeals opinion cited by the Union, the Court found plaintiffs "had ample time to amend their complaint, but they waited to seek amendment until more than fourteen months after the removal . . . [and] don't explain this delay." But the *Castanon* case is distinguishable from the facts at hand, where as detailed above, the delay by the Receiver is less than six months, with no schedule in place and a reasonable explanation for his delay.

Additionally, even if the Receiver should have been aware from the two-sentence statement in the Union's motion to intervene[11] that the Union had actually procured payments from some of Defendants' contractors, it is early enough in this litigation for all parties to fully prepare their cases after the assertion of the Receiver's proposed counterclaims.[12] The time between the Receiver's Answer and his current request was

---

[8] *Castanon v. Cathey*, 976 F.3d 1136, 1144 (10th Cir. 2020) (citing *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006). In *Castanon*, the Court found plaintiffs "had ample time to amend their complaint, but they waited to see amendment until more than fourteen months after the removal . . . [and] don't explain this delay."
[9] *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994).
[10] *Castanon*, 976 F.3d 1136, 1144 (10th Cir. 2020).
[11] *See* Union's Mem. in Opp., ECF No. 54 at 3 (quoting its Amended Motion to Intervene and Memorandum of Law in Support, ECF No. 25 at 4).
[12] *See, e.g., Safetech Int'l v. Air Prods. & Controls, Inc.*, 02-2216-DJW-JAR, 2002 WL 31833262 at *1 (D. Kan. Dec. 5, 2002) ("even assuming that Defendant did have such knowledge and failed to plead the allegations in its original Counterclaims, the Court does not find this sufficient to deny Defendant leave to amend given the early stages of this lawsuit"); *see also Boardwalk Apartments, L.C. v. State Auto Prop. & Cas. Ins. Co.*, No. 11-2714-JAR-KMH,

not excessive, and there is no schedule in this case which required the Receiver to seek amendment by a certain date. Given the complexity of this matter and the finite amount of assets, the Court is not critical of the Receiver's decision to postpone amendment while the litigation between the Union and Plaintiff developed. Finally, because this is the Receiver's first request for amendment, all of the above facts weigh in his favor.

For these reasons, the Court finds the Receiver adequately explained and demonstrated good cause for his delay. Therefore, the Receiver's motion will not be denied on the basis of untimeliness under Rule 15(a)(2).

### 2. Undue Prejudice

As the party opposing the amendment, the Union bears the burden to demonstrate undue prejudice within the meaning of Rule 15.[13] Under Rule 15, "undue prejudice" means "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant."[14] While any amendment invariably causes some "practical prejudice," undue prejudice means the amendment "would work an injustice to" the Union.[15]

---

2012 WL 3024712, at *3 (D. Kan. July 24, 2012) (finding where defendant filed its motion early in the litigation, well before the close of discovery or the dispositive motion deadline, its "delay is not inordinate, especially not compared to the cases cited by [the opposing party].").

[13] *Carefusion 213*, 2010 WL 4004874, at *4 (internal citations omitted).

[14] *Id*. (citing *U.S. v. Sturdevant,* No. 07–2233–KHV–DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008) (citing *Minter*, 451 F.3d at 1208; *Jones v. Wildgen,* 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004))).

[15] *Id*. (citing *Sturdevant,* 2008 WL 4198598, at *3; other internal citations omitted).

Considering this "most important factor,"[16] the Court finds the Union does not demonstrate prejudice sufficient to prohibit the proposed amendment. The Receiver's proposed counterclaims do not require the addition of new parties. There is no current schedule governing the Intervenor Complaint (which will be remedied in short order), and any discovery required on the Receiver's counterclaims should not be extensive. All parties will be permitted equal opportunities to conduct meaningful discovery.

Although the Union's claim of prejudice focuses on the possibility it will be forced to "expend additional time and resources and substantially delay the progress" of this case (ECF No. 54 at 4), equally important to this Court is this: whether the Receiver asserts his counterclaims in this action, or files a separate action, it is clear he intends to make those claims. Permitting the Receiver to do so within this case, already in progress, furthers the interests of economy and efficiency for both the Court and the parties. For the above reasons, the Court finds no more than practical prejudice, which will not prevent amendment.

### 3. Futility

Finding the Receiver's request to amend timely and no undue prejudice exists, the Court next considers whether the amendment would be futile. As the party opposing amendment, the Union bears the burden of establishing its futility.[17] "A proposed

---

[16] *Minter*, 451 F.3d at 1207 (noting, "The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party.")

[17] *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC-KGS, 2015 WL 1957782, at *2 (citing *Boykin v. CFS Enter., Inc.,* No. 08–2249–CM–GLR, 2008 WL 4534400, at *1 (D. Kan. Oct. 6, 2008)).

amendment is futile if the amended answer containing a counterclaim would be subject to dismissal."[18]  The proposed pleading is then analyzed using the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  When utilizing this standard, "the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party."[19]  Only if the court finds "the proposed claims do not contain enough facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law"[20] should the court find the amendment futile.

The Union contends both the Receiver's proposed state law claims for conversion and for tortious interference with a contract fail under Kansas law.  But this Court finds the motion for leave to amend pleadings is not the appropriate context in which to determine whether the monetary amounts obtained by the Union on behalf of Defendant's former employees rightfully belonged to the employee members of the Union, or whether the Bank's claim is of higher priority.  In effect, this is what the Union seeks to do.  But this question of priority is one currently before the Chief District Judge on the cross-motions for declaratory judgment.  The issue before the undersigned Magistrate Judge, in this motion, is not whether the Receiver "will ultimately prevail on the proposed [counter]claim, but whether [he] is entitled to offer evidence to support [his]

---

[18] *BAC Local Union 15 Welfare Fund v. McGill Restoration, Inc.*, No. 16-CV-2082-JAR-TJJ, 2016 WL 7179464, at *3 (D. Kan. Dec. 9, 2016) (citing *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008)).

[19] *Carefusion 213*, 2010 WL 4004874, at *5 (citing *Anderson v. Suiters,* 499 F.3d 1228, 1238 (10th Cir. 2007) (internal citations omitted)).

[20] *Id.* (citing *Raytheon Aircraft Co. v. U.S.,* 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007); *see also Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

allegations."[21]  Based upon the facts alleged in the proposed answer and counterclaims, and construing all reasonable inferences from those facts in favor of the Receiver as the Court is required to do,  the Court cannot conclude the proposed counterclaims would not withstand a motion to dismiss.  Because the proposed claims appear plausible on the face of the proposed amendment, the Court will not deny, as futile, the Receiver's request to file his amended answer under Rule 15(a).

## III. Conclusion

As discussed above, this Court has determined the Receiver's proposed amended answer and counterclaims is not futile, on its face, and its filing would result in merely practical, rather than undue, prejudice.  Finding the Rule 15 factors weigh in favor of amendment, and the Union accepts the proposed counterclaims would be compulsory under Fed. R. Civ. P. 13, the Court in its discretion will allow the Receiver to amend his answer under Rule 15(a) and assert his counterclaims under Rule 13(a) and (e).  Because the Court prefers the case to proceed on its full merits,[22] in the interests of justice the Receiver is permitted to file his amended answer and counterclaims.

It does appear to the Court discovery is likely necessary on the Receiver's counterclaims and a schedule is necessary to timely manage the progress of this case under Fed. R. Civ. P. 16(b).  Therefore, the Receiver must file his Amended Answer and Counterclaims no later than **January 20, 2021**; any Answer is due **February 3, 2021**, and a Scheduling Conference will be held on **March 3, 2021 at 10:00 a.m**.  Counsel are

---

[21] *Safetech Int'l,* 2002 WL 31833262 at *2 (other internal citations omitted).
[22] *See Hinkle*, 2012 WL 2581000, at *1 (citing *Koch*, 127 F.R.D. at 209).

expected to confer in advance of the conference and submit a Planning Report or other similar suggestion for deadlines to govern this case. Said Planning Report must be submitted by email at ksd_Birzer_chambers@ksd.uscourts.gov no later than **February 24, 2021.**

**IT IS THEREFORE ORDERED** that Receiver Michael L. Staheli's Motion for Leave to File Amended Answer and Counterclaims to Intervenor's Complaint (**ECF No. 50**) is **GRANTED.** The Amended Answer and Counterclaims must be filed no later than **January 20, 2021**; any Answer is due **February 3, 2021.**

**IT IS FURTHER ORDERED** that a Scheduling Conference will be held on **March 3, 2021 at 10:00 a.m**. by telephone before U.S. Magistrate Judge Gwynne E. Birzer. Participants must call the conference line at **1-888-363-4749**, using access code **9686294**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 5th day of January, 2021.

s/ Gwynne E. Birzer  
GWYNNE E. BIRZER  
United States Magistrate Judge