IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BANK MIDWEST, A DIVISION OF NBH BANK**,<br><br>    **Plaintiff,**<br><br>    v.<br><br>**R.F. FISHER ELECTRIC COMPANY, LLC; R.F. FISHER HOLDINGS, INC.; AND G & G LEASING, LLC,**<br><br>    **Defendants.** | Case No. 19-CV-2560-JAR-GEB |

## MEMORANDUM AND ORDER

Plaintiff Bank Midwest, a division of NBH Bank, filed suit against Defendants R.F. Fisher Electric Company ("Fisher"), R.F. Fisher Holdings, and G & G Leasing (collectively, "Defendants") due to Defendants' default on loans from Bank Midwest.  Plaintiff also sought the emergency appointment of a Receiver, who was appointed in September 2019. International Brotherhood of Electrical Workers Local 124 ("the Union") filed an Intervenor Complaint asserting several claims and seeking declaratory judgment on a claim.

On March 25, 2021, the Receiver filed a Second Amended Answer and asserted three counterclaims against the Union.  The Union is now before the Court seeking dismissal of those claims for failure to state a claim (Doc. 82).  For the reasons stated in detail below, the Court denies in part and grants in part the motion.  The Court denies the Union's previous motion to dismiss (Doc. 65) as moot.

**I.     Legal Standard**

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative

level"[1] and must include "enough facts to state a claim to relief that is plausible on its face."[2] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but it requires more than "a sheer possibility."[4]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the Court "must take all of the factual allegations in the complaint as true, [but it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[7] Thus, the Court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8]  Second, the Court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[9]  "A claim has facial plausibility when the plaintiff pleads factual

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

[2] *Id*. at 570.

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[5] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[7] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[8] *Id.* at 678–79.

[9] *Id*. at 679.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

## II. Facts and Procedural Background

The facts are taken from the Receiver's Second Amended Answer and Counterclaim filed on March 25, 2021. Defendant Fisher was an electrical subcontractor which terminated its operations on September 16, 2019. A Receiver was appointed on September 23, 2019, over Fisher's real and personal collateral. Pursuant to Section 1 of the Order of Appointment, the Receiver is authorized to, among other things, take control of, liquidate, protect and preserve Fisher's assets, including but not limited to, collect account receivables owed to Fisher.

At the time of the Receiver's appointment, the accounts receivable on Fisher's books and records showed customer obligations owed to Fisher for work that was performed under various service contracts, work on new construction contracts, and remodel projects through September 8, 2019. Such contracts were with parties such as property owners, general contractors, and subcontractors and included contractors such as JE Dunn, Citadel, and Kelly. The accounts receivable totaled approximately $5.4 million at that time.[11]

Fisher and the Union are parties to a collective bargaining agreement ("CBA").[12] Under this agreement, certain wages and fringe benefits were payable by Fisher to its inside labor employees for work performed. Fisher employees performed work on various projects that were the subject of contracts between Fisher and JE Dunn, Citadel, and Kelly. The contractually

---

[10] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[11] As of the most recent quarterly report, filed by the Receiver on March 15, 2021, the accounts receivable owed to Fisher is approximately $1.5 million dollars. *See* Doc. 77-1.

[12] The Union and the Receiver were previously before the Court with regard to the Union's request for declaratory judgment that its claim for $137,955.11 in unpaid wages and benefits had priority over Bank Midwest's liens. The Court found that the Union did not have priority over Bank Midwest's liens. Doc. 63.

agreed upon amounts owed to Fisher by JE Dunn, Citadel, and Kelly at the time of the Receiver's appointment included costs for labor provided by Fisher's employees who were Union members.  Such contractual amounts owed to Fisher at the time of the Receiver's appointment constitute receivership property to be collected by the Receiver and applied as directed in the Order of Appointment.

The Receiver alleges that during the course of the receivership, the Union contacted a number of Fisher's former customers, including, but not limited to, owners, general contractors, and subcontractors who had contracted with Fisher to perform requested work and obtained payments directly from such persons.  The Receiver contends that those funds represent contract balances and receivables owed to Fisher and constitute property of the receivership estate.  Payments obtained by the Union from Fisher's former customers include: (1) $53,828.43 paid by JE Dunn, (2) $254,898.41 paid by Citadel, (3) $19,466.37 paid by Kelly, and (4) $4,140.56 paid by Kelly.  The Receiver calls these funds the "Diverted Fisher Receivables."  The Receiver alleges that the Union had knowledge of the contractual relationships between Fisher and JE Dunn, Citadel, and Kelly and had knowledge that contract balance amounts were due to Fisher for labor and material furnished by Fisher.

The Receiver asserts three claims: (1) conversion, (2) tortious interference with contract, and (3) enforcement of Order of Appointment.  The Union now moves for dismissal of all claims asserted against it, asserting that the Receiver fails to state a claim.[13]

---

[13] The Union filed a Motion to Dismiss (Doc. 65) that is pending, but the Court denies it as moot. Subsequent to that motion, the Receiver filed an Amended Answer and Counterclaims (Doc. 80).  Due to revisions in the Amended Answer and Counterclaims, the Union filed another Motion to Dismiss—the motion the Court is currently ruling on.

III.  Discussion

A.  Conversion

The Receiver alleges that Fisher had accounts receivable owed to it from former customers, subcontractors, and contractors, including from JE Dunn, Citadel, and Kelly. Pursuant to the Order of Appointment, the receivables owed to Fisher constituted property of the receivership estate.  The Receiver contends that the Union obtained payments from JE Dunn, Citadel, and Kelly in the approximate amount of $330,000, and thus diverted receivables away from the receivership estate.

"Conversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights."[14]  "In an action for conversion, the petition must allege that at the time of the conversion the plaintiff was either in possession, or had a right to the possession, of the property converted."[15]

The Union argues that the Receiver fails to allege sufficient facts that the Receiver was entitled to specific payments or a specific identifiable fund and complains that the Receiver's allegations are vague and conclusory.  But the Receiver alleges that approximately $330,000 in accounts receivable from JE Dunn, Citadel, and Kelly was diverted from the receivership estate.[16]  Thus, the Receiver does identify a specific payment or fund.

The Union also appears to argue that the Receiver fails to allege facts regarding an exclusion to accounts receivable because the Receiver is still pursuing such receivables from JE Dunn, Citadel, and Kelly.  Yet, the Receiver allegedly does not have access to the full amount of

---

[14] *Bomhoff v. Nelnet Loan Servs., Inc.*, 109 P.3d 1241, 1246 (Kan. 2005).

[15] *Rezac Livestock Comm'n Co. v. Pinnacle Bank*, 255 F. Supp. 3d 1150, 1172 (D. Kan. 2017) (quoting *Guernsey v. Fulmer*, 71 P. 578, 578 (Kan. 1903)).

[16] The Receiver itemizes each amount from each entity.

5

the accounts receivable from JE Dunn, Citadel, and Kelly because the receivables have been diminished due to the diversion of some of those funds to the Union. Here, viewing the counterclaim in the light most favorable to the Receiver, the Court finds that the Receiver specifically alleges that he had the right to possession of the property—the accounts receivable from JE Dunn, Citadel, and Kelly—and that the Union's action in taking these receivables (or at least a portion of them) was unauthorized due to the Order of Appointment. Furthermore, the Receiver alleged that the Union's diversion of the approximate $330,000 in accounts receivable excluded the Receiver from obtaining it. Thus, the Court finds that the Receiver states a claim for conversion.

**B.      Tortious Interference with Contract**

The Receiver alleges that Fisher had contracts with JE Dunn, Citadel, and Kelly to furnish labor and material. In addition, the Receiver contends that the Union had knowledge of these contracts and knowledge of the Order of Appointment that authorized funds to be collected for the receivership estate. Finally, the Receiver alleges that the Union intentionally caused JE Dunn, Citadel, and Kelly to divert some of the funds from their contracts with Fisher from going to the receivership estate and instead go to the Union.

"Kansas has long recognized that a party who, without justification, induces or causes a breach of contract will be answerable for damages caused thereby."[17] In Kansas, the elements of a claim for tortious interference with contract are: "(1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification;

---

[17] *Dickens v. Snodgrass, Dunlap & Co.*, 872 P.2d 252, 257 (Kan. 1994) (citing *Turner v. Halliburton Co.*, 722 P.2d 1106, 1109 (Kan. 1986)).

and (5) damages resulting therefrom."[18]  Tortious interference with contract also requires malicious conduct by the defendant.[19]

Here, the first element is met as the Union concedes that Fisher had contracts with JE Dunn, Citadel, and Kelly.  The second element is also met because the Receiver adequately alleges that the Union had knowledge of the contractual relationship between Fisher and JE Dunn, Citadel, and Kelly, and the Union's employees performed work on the projects, and thus knew of the contracts and money due from JE Dunn, Citadel, and Kelly to Fisher.[20]  As to the third element, the Union contends that the Receiver completely omits any reference to a breach.  The Court disagrees.  The Receiver alleges that money from the contracts was due from JE Dunn, Citadel, and Kelly to Fisher and that the Union caused each entity to make its payment, or at least a portion of its payment, to the Union instead of Fisher.  Thus, the Receiver adequately alleges intentional procurement of a breach of contract.

As to the fourth element, the Union asserts that the Receiver fails to allege that the Union lacked justification.[21]  Instead of addressing this potential pleading deficiency, the Receiver asserts that the Union does not contend that it was justified or privileged to contact JE Dunn, Citadel, or Kelly to cause funds owed to Fisher to be paid to the Union.  But the Union does so contend that it was justified—it asserts that employees can pursue wage amounts from various

---

[18] *Diederich v. Yarnevich*, 196 P.3d 411, 418 (Kan. Ct. App. 2008) (quoting *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 150 (Kan. 2003)); *see also Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1288 (D. Kan. 1997) (citation omitted).

[19] *Burcham*, 77 P.3d at 152 (quoting *Turner*, 722 P.2d at 1115).

[20] The Union asserts that the Receiver pleads that the Union had knowledge of the contractual relationships between Fisher and JE Dunn, Citadel, and Kelly but fails to identify any specific contract about which the Union had knowledge.  The Union appears to be seeking much greater specificity than is required.  Here, the Union is on notice of the contracts.

[21] The Union only briefly states that the Receiver also does not allege malice.  "[M]alice is interwoven with the notion of justification, or the lack thereof."  *Mediware Info. Sys., Inc. v. McKesson Info. Sols., LLC*, No. 06-2391-JWL, 2007 WL 926142, at *4 (D. Kan. Mar. 26, 2017) (citing *Burcham*, 77 P.3d at 152).  The Court will thus consider these two concepts together.

contractors and owners of projects where they worked but went unpaid.  Generally, justification is a factual question,[22] but it must be adequately pleaded in the first place and the question here is whether the Receiver adequately alleged that the Union lacked justification for its actions.

The Receiver does not use the word "justification" in the counterclaim, but throughout the Receiver's entire counterclaim, he alleges that the Union wrongfully interfered with contracts between Fisher and JE Dunn, Citadel, and Kelly.  The Receiver also alleges that the Union was aware of and had knowledge of the Order of Appointment that authorized the Receiver to collect funds from JE Dunn, Citadel, and Kelly for the receivership estate and diverted those funds.  Thus, the Court finds that the Receiver adequately alleges by implication that the Union's conduct was not justified.[23]  Finally, the Receiver alleges damages because he claims that the receivership estate did not receive approximately $330,000 in funds from the contracts between Fisher and JE Dunn, Citadel, and Kelly that instead went to the Union.  Accordingly, the Court finds that the Receiver states a claim for tortious interference with contract.

## C.     Enforcement of Order of Appointment

The Receiver also alleges that the Order of Appointment gives him the power to enforce existing contracts related to Fisher's business and to exclude Fisher's employees from possession of Fisher's assets.  He requests that the Court enforce the order and direct the Union to deliver

---

[22] *Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*, 192 F. Supp. 3d 1215, 1129 (D. Kan. 2016) (citing *Burcham*, 77 P.3d at 152).

[23] *See, e.g.*, *Indy Lube Invs., L.L.C. v. Wal-Mart Stores, Inc*., 199 F. Supp. 2d 1114, 1124–25 (D. Kan. 2002) (citation omitted) (noting that to satisfy notice pleading requirements, the plaintiff need not specifically include the word "malice" but instead include detailed allegations with respect to the material element).
    The Court also notes that, at this time, the Court is considering the pleadings and not the evidence. Admittedly, it will be a key consideration in whether the Receiver can prove its claim for tortious interference with contract as to whether the Union's conduct was justified because of the Union's position that the funds were due to the Union because the Union's employees performed the labor on the projects.  But, at the pleading stage, the Court must accept the Receiver's allegations that the Union's conduct was intentionally wrongful and done to interfere with the contract and cannot determine whether the Union was justified.

the "Diverted Fisher Receivables" to the Receiver. The Union asserts that the "enforcement of order of appointment" is a request but is not a cause of action. The Court agrees.

The Receiver provides the Court with no authority demonstrating that a separate cause of action exists here. The Receiver's third claim also appears duplicative of his other two claims as he requests the same type of relief—the delivery of the "Diverted Fisher Receivables." Although the Receiver asserts that the "Diverted Fisher Receivables" are property of the receivership estate, the Receiver's other two claims involve the issue of whether the funds are property of the estate and whether the Union converted or interfered with these funds. Thus, it is not conclusive that these funds are property of the estate. Accordingly, the Receiver fails to state a claim for Enforcement of Order of Appointment.

**IT IS THEREFORE ORDERED BY THE COURT** that the Union's Motion to Dismiss (Doc. 65) is **denied as moot**.

**IT IS FURTHER ORDERED BY THE COURT** that the Union's Motion to Dismiss (Doc. 82) is **granted in part and denied in part**.

**IT IS SO ORDERED.**

Dated: September 20, 2021

S/ Julie A. Robinson  
JULIE A. ROBINSON  
CHIEF UNITED STATES DISTRICT JUDGE